**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| ROBERT F. FISHER, ET AL., <br> Plaintiffs, <br> v. <br> NATIONSTAR MORTGAGE LLC, <br> Defendant. | Case No. 17-cv-02994-BLF <br><br> **ORDER GRANTING MOTION TO DISMISS** <br><br> [Re: ECF 31] |

Plaintiffs Robert F. Fisher and Marion Fisher bring this action against Defendant Nationstar Mortgage LLC ("Nationstar") for alleged misconduct relating to the review of their application for modification of their home mortgage loan. The action was initiated in state court and removed to this District based on diversity jurisdiction. Notice of Removal, ECF 1. Previously, the Court granted Nationstar's motion to dismiss the complaint with leave to amend. ECF 28. Thereafter, Plaintiffs filed a first amended complaint. First. Am. Compl. ("FAC"), ECF 30.

Before the Court is Nationstar's motion to dismiss the first amended complaint. Mot. 31. Plaintiffs have not filed an opposition. Pursuant to Civil Local Rule 7-1(b), the Court takes this matter under submission without oral argument. For the reasons discussed below, Nationstar's motion to dismiss the first amended complaint is GRANTED without leave to amend.

**I. BACKGROUND**

For purposes of considering this motion, the Court deems facts pled in the Complaint to be true. Conclusory allegations, however, "are not entitled to be assumed true." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007)).

Plaintiffs live at 1645 Harrod Way, Salinas, California 93906. FAC ¶ 13. Nationstar is the

current servicer of Plaintiffs' loan. *Id.* ¶ 6. When Plaintiffs applied for a loan modification review in 2016–2017, Nationstar "orally agreed" to review their application in good faith and within a reasonable time. *Id.* ¶¶ 14–16. Moreover, employees and agents of Nationstar assured Plaintiffs that they would qualify for a loan modification and they needed to submit certain documents. *Id.* ¶ 15. Plaintiffs further allege that they were "instructed to default" and told to "continue to be in default on [their] mortgage payments and to send in all loan documents so Defendant would put [them] in loan modification review." *Id.* ¶ 19. Plaintiffs submitted all of the documents that Nationstar requested but received no denial or acceptance from the review within a reasonable time. *Id.* ¶ 18. Rather, Nationstar continued to request additional documents and information, and told Plaintiffs that the "file was in review." *Id.* ¶ 21. Plaintiffs allege that they complied with Nationstar's requests and "sent in all requested documents." *Id.* ¶ 22.

Plaintiffs continued to ask about their loan modification application. *Id.* ¶ 23. Nationstar's agents told Plaintiffs that the loan modification was under review but "it was not necessary" for Plaintiffs to pay their mortgage. *Id.* ¶ 24. Plaintiffs allege that Nationstar shut down access to their online account and changed their single point of contact numerous times. *Id.* ¶¶ 27–28. Plaintiffs further claim that Nationstar made "ominous outbound robo-calls" regarding their mortgage default. *Id.* ¶ 29.

At some point, Plaintiffs were told that Nationstar put their "loan in foreclosure." *Id.* ¶ 30. The FAC is unclear on who made this statement regarding the foreclosure. Plaintiffs never received a letter from Nationstar that their loan modification application was denied, and Plaintiffs believe that their application remains in review for a loan modification. *Id.* ¶¶ 31, 33. Plaintiffs also believe that Nationstar's "extremely incompetent and obstructive" conduct has caused Plaintiffs to "potentially" lose their residence. *Id.* ¶ 35. Notably, the FAC does not allege that Nationstar ever filed a notice of default or notice of trustee's sale in order to commence the non-judicial foreclosure process, or that the property was ever sold at a trustee's sale. *See generally* FAC.

The FAC pleads three causes of action: (1) violation of California Business and Professions Code § 17200 and California Homeowner Bill of Rights; (2) breach of the covenant of

good faith and fair dealing; and (3) negligence.[1]

## II. LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III. DISCUSSION

### A. Subject Matter Jurisdiction

As a threshold issue, Plaintiffs allege that this Court does not have subject matter jurisdiction over this action because there is no diversity jurisdiction. FAC 2. According to the FAC, the amount in controversy is not satisfied as Plaintiffs are not "seeking punitive damages." *See id.* While the proper procedure for a plaintiff to challenge jurisdiction is by a motion to remand, the Court may always *sua sponte* remand a case for lack of subject matter jurisdiction. *Cabriales v. Aurora Loan Servs.*, No. C 10-161, 2010 WL 761081, at *2 (N.D. Cal. Mar. 2, 2010) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction over a case that has been removed to federal court, the case shall be remanded.")

---

[1] The caption page of the FAC lists a fourth "actual fraud" claim. However, the body of the FAC does not plead a fourth cause of action based on fraud.

3

(citing 28 U.S.C. § 1447(c)).

However, this Court has already determined that it has subject matter jurisdiction over this action based on diversity jurisdiction when it ruled on Nationstar's motion to dismiss the original complaint. ECF 28. In its October 16, 2017 Order, the Court found that Nationstar had shown that the original complaint sought damages well in excess of $75,000. *Id.* at 5. While the Court allowed Plaintiffs to amend the complaint regarding the amount in controversy, it made clear that such an amendment would not deprive this Court of jurisdiction. *Id.*; *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 295 (1938) ("[S]ubsequent reduction of the amount claimed cannot oust the district court's jurisdiction."); *Bay Area Surgical Mgmt., LLC v. Principal Life Ins. Co.*, No. 5:12-CV-01140, 2012 WL 3656451, at *2 (N.D. Cal. Aug. 24, 2012) ("When removal is based on diversity jurisdiction, 'events occurring subsequent to removal which reduce the amount recoverable, whether beyond the plaintiff's control or the result of his volition, do not oust the district court's jurisdiction once it has attached.'" (citation omitted)). Indeed, the Ninth Circuit recently confirmed that "when the amount in controversy is satisfied at removal, any subsequent amendment to the complaint or partial dismissal that decreases the amount in controversy below the jurisdictional threshold does not oust the federal court of jurisdiction." *Chavez v. JPMorgan Chase & Co.*, No. 16-55957, 2018 WL 1882908, at *3 (9th Cir. Apr. 20, 2018). As such, regardless of the amount of relief that Plaintiffs now seek in their FAC, this Court has subject matter jurisdiction.

### B. Failure to State a Claim

The Court now turns to Nationstar's motion to dismiss each claim asserted in the FAC under Rule 12(b)(6). For the reasons that follow, Nationstar's motion to dismiss the FAC is GRANTED without leave to amend.

#### i. First Cause of Action: UCL

Under the first cause of action, Plaintiffs allege violation of California Business and Professions Code § 17200, the Unfair Competition Law ("UCL"). The first cause of action also asserts that Nationstar violated California's Homeowner Bill of Rights ("HBOR"). The Court previously ordered that an HBOR claim must be pled as a separate cause of action if Plaintiffs

4

seek to bring such a claim independent of the UCL claim. October 16, 2017 Order 9. However, Plaintiffs have not pled an independent cause of action under HBOR in their FAC. As such, the Court finds that the first cause of action is a UCL claim and that Plaintiffs no longer attempt to assert a standalone HBOR claim. Nevertheless, the Court will analyze Plaintiffs' HBOR allegations to determine whether those allegations support a UCL claim.

Under the UCL, Plaintiffs allege that Nationstar engaged in various deceptive business practices by making misleading statements regarding the loan modification and by failing and refusing to offer a loan modification. FAC ¶¶ 52–55. Plaintiffs further allege that Nationstar violated HBOR by not providing a written denial and failing to establish a single point of contact. *Id.* ¶¶ 49–50. Nationstar argues that Plaintiffs' first cause of action is deficient because Plaintiffs fail to allege a legal basis for the UCL claim and they lack standing to assert that claim.

The Court is persuaded by Nationstar's arguments. To state a claim under the UCL, Plaintiffs must allege that Nationstar engaged in an "unlawful, unfair or fraudulent business act or practice" as a result of which Plaintiffs suffered an "injury in fact" and "lost money or property as a result of the unfair competition." *See* Bus. & Prof. Code § 17204; *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 852 (Ct. App. 2008), *as modified* (Jan. 28, 2008). "Section 17200 'borrows' violations from other laws by making them independently actionable as unfair competitive practices." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (2003). For the following reasons, the FAC fails to satisfy these requirements.

### a. The Unlawful Prong

Plaintiffs fail to state a claim under the UCL's "unlawful" prong. Without pleading a violation of another statute or common law, Plaintiffs' UCL claim under the unlawful prong would fail. *Kaurloto v. U.S. Bank, N.A.*, No. 16-CV-06652, 2016 WL 6808117, at *7 (C.D. Cal. Nov. 17, 2016) ("A UCL claim stands or falls 'depending on the fate of antecedent substantive causes of action.'" (quoting *Krantz v. BT Visual Images, L.L.C.*, 89 Cal. App. 4th 164, 178 (Ct. App. 2001), *as modified* (May 22, 2001))). Here, Plaintiffs' first cause of action asserts violation of HBOR. FAC ¶¶ 49–50. Specifically, the FAC pleads that Nationstar violated HBOR's "dual-tracking" provision and failed to establish a single point of contact. *Id.* ¶ 50. The FAC further

5

alleges that Nationstar should have provided a written denial including the "reasons for denial and deadline for appeal." *Id.* ¶ 49. While the FAC does not cite HBOR's code section, it appears that Plaintiffs rely on §§ 2923.6 and 2923.7 as they assert "dual tracking" and "single point of contact" violations. *See* Cal. Civ. Code § 2923.6 (2017); Cal Civ. Code § 2923.7.[2]

The Court's review of the FAC reveals that no violations of HBOR are sufficiently pled. As a prohibition against "dual tracking," HBOR bars mortgage servicers from recording a notice of default or notice of trustee's sale, or conducting a trustee's sale, while a complete first lien loan modification application is pending. Cal. Civ. Code § 2923.6(c) (2017). Therefore, to adequately plead a claim under dual tracking, the FAC must allege that Nationstar recorded a notice of default or notice of trustee's sale, or proceeded to conduct a trustee's sale. But like the original complaint, nowhere does the FAC state such an allegation. *See Rizk v. Residential Credit Sols., Inc.*, No. CV 14-9371, 2015 WL 573944, at *10 (C.D. Cal. Feb. 10, 2015) (holding that the plaintiff failed to state a claim under "dual tracking" because there was no allegation that a notice of default was recorded).

In addition, the FAC's allegation that Nationstar should have provided a written denial including the "reasons for denial and deadline for appeal" does not constitute a dual tracking violation. While a mortgage servicer is required to provide a written notice identifying the reasons for denial and the time to appeal, that requirement is triggered "[f]ollowing the denial of [the] first lien loan modification application." *See* Cal. Civ. Code § 2923.6(f) (2017). Here, the FAC alleges that Nationstar has not denied Plaintiffs' loan mortgage application. FAC ¶¶ 31, 33. As such, the FAC does not support Plaintiffs' allegation that Nationstar was obligated to provide the "reasons for denial and deadline for appeal" regarding their loan modification application.

As mentioned, the FAC alleges that Nationstar failed to "establish a single point of contact," which is premised on Civil Code § 2923.7, which requires Nationstar to keep Plaintiffs

---

[2] Section 2923.6 remained in effect only until January 1, 2018, and as of that date was repealed. Beginning January 1, 2018, a new "dual tracking" provision is provided under § 2924.11. As the alleged facts took place before 2018, the Court considers the pre-2018 version of § 2923.6. The Court need not analyze the effect of the repeal of § 2923.6 because Plaintiffs' first cause of action fails under the pre-2018 version.

informed about the status of the loan modification application. *See* Cal. Civ. Code § 2923.7. Section 2923.7 provides that "[u]pon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a 'single point of contact' and provide to the borrower one or more direct means of communication with the single point of contact." Cal. Civ. Code § 2923.7(a). A single point of contact ("SPOC") is defined as "an individual or team of personnel each of whom has the ability and authority to perform the responsibilities described" in the statute. Cal. Civ. Code § 2923.7(e). The statute requires a SPOC to coordinate "receipt of all documents associated with available foreclosure prevention alternatives" and to "[notify] the borrower of any missing documents necessary to complete the application." Cal. Civ. Code § 2923.7(b)(2); *Johnson v. Bank of Am., N.A.*, No. 14-05053-JSC, 2015 WL 351210, at *5–6 (N.D. Cal. Jan. 23, 2015).

Plaintiffs' sole allegation that their single point of contact "changed numerous times" is insufficient to plead a violation of § 2923.7. HBOR only provides a pre-foreclosure remedy for material violations of § 2923.7. *Neal v. Select Portfolio Servicing, Inc.*, No. 5:15-CV-03212-EJD, 2017 WL 1065284, at *6 (N.D. Cal. Mar. 20, 2017). A material violation is one where "the alleged violation affected a plaintiff's loan obligations or the modification process." *Cornejo v. Ocwen Loan Servicing, LLC*, 151 F. Supp. 3d 1102, 1113 (E.D. Cal. 2015). Here, while Plaintiffs allege that their single point of contact "changed numerous times," they do not allege how those changes affected their ability to submit documents or the loan modification process. In fact, the FAC pleads that Nationstar's agents "continued to request" documents and that Plaintiffs "complied with all of these requirements and sent in all requested documents in a timely manner." FAC ¶¶ 21–22. Hence, Plaintiffs' own admissions prevent a plausible inference that the purported changes in the single point of contact materially affected "plaintiff's loan obligations or the modification process" in a negative way. *Cornejo*, 151 F. Supp. 3d at 1113. Thus, Plaintiffs do not sufficiently allege any material violation of § 2923.7.

Accordingly, Plaintiffs fail to predicate their UCL claim on violations of other law. In particular, Plaintiffs have not cured the deficiencies in their earlier HBOR allegations in the original complaint and thus they cannot rely on HBOR to support their UCL claim. Moreover, as

discussed in other parts of this order, the Court finds that the FAC's allegations fail to support the second and third causes of action. Hence, the UCL claim cannot be based on those causes of action. Therefore, Plaintiffs' UCL claim under the unlawful prong in untenable. *Kaurloto*, 2016 WL 6808117, at *7 ("A UCL claim stands or falls 'depending on the fate of antecedent substantive causes of action.'" (quoting *Krantz*, 89 Cal. App. 4th at 178)).

### b. The Unfair Prong

Plaintiffs fail to plead a claim under the UCL's "unfair" prong. An alleged "unfair" practice must be "tethered" to specific "constitutional, statutory, or regulatory provisions." *Scripps Clinic v. Superior Court*, 108 Cal. App. 4th 917, 940 (2003). Here, Plaintiffs appear to attempt to satisfy this requirement by alleging that Nationstar "failed to properly qualify the loan modification" and violated "established California public polices to promote and preserve home ownership and to prevent foreclosures." FAC ¶ 54 (citing Cal. Civ. Code §§ 1695(b), 2923.5, and 3412). However, the FAC contains no factual allegations that show how Nationstar "failed to properly qualify the loan modification" or violated California's public policy. In fact, while California Civil Code § 2923.5 sets forth a list of requirements that a mortgage servicer must follow, the FAC does not include allegations that even suggest that Nationstar did not comply with that section. For example, § 2923.5(a)(1) states that the mortgage servicer may not record a notice of default until certain conditions are met. Cal Civ. Code § 2923.5(a)(1) (2017). However, Plaintiffs do not allege that Nationstar violated that section because the FAC does not plead that a notice of default has been recorded. In addition, given that the FAC does not even allege that Nationstar denied Plaintiffs' loan modification application, it is unclear how Nationstar's purported conduct contravenes California Civil Code §§ 1695(b) and 3412.[3] Hence, the FAC merely alleges violations of various statutes in conclusory terms without adequate factual allegations. *See id.* Merely reciting statutes is insufficient. As such, the FAC's allegations fail to

---

[3] Section § 1695(b) states that: "The Legislature declares that it is the express policy of the state to preserve and guard the precious asset of home equity, and the social as well as the economic value of homeownership." Cal. Civ. Code § 1695(b). Section 3412 provides that "[a] written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled." Cal. Civ. Code § 3412.

state a UCL claim under the "unfair" prong because they largely consist of legal conclusions. *See Eclectic Props. East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (allegations that are no more than legal conclusions are not entitled to an assumption of truth).

### c. The Fraudulent Prong

Plaintiffs fail to state a UCL claim under the "fraudulent" prong. A UCL claim based on fraud must satisfy Rule 9(b)'s heightened pleading requirements. *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1073 (N.D. Cal. 2012). Under the federal rules, a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Here, the FAC fails to plead with particularity who, where, and when any employee or agent of Nationstar engaged in fraudulent conduct in violation of the UCL. Rather, the FAC merely alleges that Nationstar fraudulently kept Plaintiffs' application under review in conclusory terms.

### d. The Standing Requirement

More importantly, to have standing to assert a UCL claim, a plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 322 (2011) (emphasis in original). Here, the FAC does not satisfy the first prong. Plaintiffs merely allege that they suffered "material financial injury in fact" in the form of "loss of Plaintiffs' equity, costs and expenses related to protecting Plaintiffs' Residence, reduced credit score, unavailability of credit, increased costs of credit, reduced availability of goods and services tied to credit ratings, increased costs of those services, as well as fees and costs, including, without limitation, attorneys' fees and costs and damages for the inability to get credit." FAC ¶ 57. However, while Plaintiffs assert that they suffered injury due to loss of equity, reduced credit score and inability of obtaining credit, those assertions are conclusory without any factual allegations. *Iqbal*, 556 U.S. at 681 (holding that conclusory statements are "not entitled to be assumed true"). The FAC fails to cure this deficiency which the Court previously identified in its October 16, 2017 Order. Also, the alleged costs for litigation do not confer standing under the UCL. *Cordon v. Wachovia Mortg., a Div. of Wells Fargo Bank, N.A.*, 776 F. Supp. 2d 1029, 1039

(N.D. Cal. 2011) (holding that legal expenses do not confer standing under the UCL, concluding that "[u]nder Plaintiff's reasoning, a private plaintiff bringing a UCL claim automatically would have standing merely by filing suit."). Hence, Plaintiffs fail to adequately plead that damages have been incurred as a result of any purported violations of the UCL.

Moreover, Plaintiffs have not established standing under the second prong. As mentioned, Plaintiffs must satisfy the causation requirement by sufficiently pleading that their alleged harm was *caused* by Nationstar's purported unlawful conduct. *See Hall v. Time Inc.*, 70 Cal. Rptr. 3d 466, 471–72 (Cal. Ct. App. 2008), as modified (Cal. Ct. App. Jan. 28, 2008). The FAC alleges that Nationstar received Plaintiffs' loan modification application for review and has not issued a denial or approval. FAC ¶¶ 31, 33. However, as Nationstar argues (Mot. 7–8), the FAC does not plead how such conduct (assuming it is unlawful) caused a loss in the equity (or market value) of Plaintiffs' home or affected their credit. In addition, Plaintiffs' purported dual tracking allegations cannot satisfy the causation requirement as the FAC does not allege that Nationstar ever filed a notice of default or notice of trustee's sale in order to commence the non-judicial foreclosure process, or that the property was ever sold at a trustee's sale. Plaintiffs therefore cannot establish the second "causation" prong for standing under the UCL. *Id.*

### e. Conclusion

For the above reasons, the Court GRANTS Nationstar's motion to dismiss the first cause of action. Here, the Court finds that granting leave to amend is not warranted. Despite the fact that the Court identified deficiencies in Plaintiffs' original complaint, the FAC fails to cure those deficiencies. In particular, Plaintiffs have not cured the deficiencies in their HBOR allegations. Plaintiffs continue to allege their purported injury in conclusory terms and fail to plead that Nationstar recorded a notice of default or notice of trustee's sale to commence the non-judicial foreclosure process. Plaintiffs also failed to offer any indication that they can cure those deficiencies such that leave to amend would not be futile. Thus, the dismissal is without leave to amend.

### ii. Second Cause of Action: Breach of the Covenant of Good Faith and Fair Dealing

Plaintiffs allege a breach of the covenant of good faith and fair dealing under the second cause of action. The FAC pleads that Nationstar "orally agreed to review" Plaintiffs' loan modification application. FAC ¶¶ 61, 71. Plaintiffs also allege that Nationstar breached the covenant by denying them "the benefits of the oral agreement to review loan modification application" and failing to timely deny or approve their loan modification application. *Id*. ¶¶ 72–74.

"California law, like the law in most states, provides that a covenant of good faith and fair dealing is an implied term in every contract." *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 996 (9th Cir. 2002). "[T]he scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.,* 2 Cal. 4th 342, 373 (1992). The elements of a cause of action for breach of the implied covenant of good faith and fair dealing are: (1) the parties entered into a contract; (2) the plaintiff fulfilled his/her obligations thereunder; (3) any conditions precedent to defendant's performance occurred; (4) defendant unfairly interfered with plaintiff's right to receive the benefits of the contract; and (5) plaintiff was harmed by defendant's conduct. *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F.Supp.2d 952, 968 (N.D. Cal. 2010).

Nationstar argues that the second cause of action is deficient because Plaintiffs' allegations do not relate to the "enforcement of any existing contract terms." Mot. 10. According to Nationstar, Plaintiffs' allegations do not "sound in contract based on the existing deed of trust." *Id.* Indeed, the FAC's allegations make clear that the alleged contract at issue is Nationstar's purported "oral agreement" to review Plaintiffs' loan modification application rather than an agreement that modifies the loan terms. FAC ¶¶ 61, 73. As such, Plaintiffs' claim for a breach of the covenant of good faith and fair dealing is premised on the existence and breach of an oral agreement. The Court, however, finds that Plaintiffs' claim fails for the following reasons.

First, Plaintiffs do not adequately plead the existence of a contract. The FAC's allegations that the parties entered into a contract by an oral agreement to review the loan modification within an unspecified period of time is conclusory and too indefinite to create a legally binding contract. *See Price v. Wells Fargo Bank*, 213 Cal.App.3d 465, 483 (1989) (the alleged oral agreement to

restructure the borrower's debts was too indefinite to create a legally binding contract); *Ladas v. California State Auto. Assn.*, 19 Cal. App. 4th 761, 770 (Ct. App. 1993) ("[A]n offer must be sufficiently definite or must call for such definite terms in the acceptance that the performance promised is reasonably certain."). Nor does the FAC adequately plead that consideration was given to form a binding contract. The Court also finds that the alleged conduct by Nationstar was not an offer to form a contract but more closely resembles an invitation to apply for a loan modification, which *if accepted by further assent from Nationstar* could form a contract between the two parties. *See* Restatement (Second) of Contracts § 26 (1981). Preliminary negotiations or agreements for future negotiations are not enforceable contracts.[4] *Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 213 (Ct. App. 2006).

Second, even assuming that the parties entered into an oral contract, Plaintiffs' allegations do not identify any express terms of a contract which Nationstar has breached. While California law "implies in every contract . . . a covenant of good faith and fair dealing," *Alameda Cty. Flood Control v. Dep't of Water Res.*, 152 Cal. Rptr. 3d 845, 876 (Cal. Ct. App. 2013), "[t]he implied covenant of good faith and fair dealing is limited to assuring compliance with the *express terms* of the contract," *Pasadena Live, LLC v. City of Pasadena*, 8 Cal. Rptr. 3d 233, 237 (Cal. Ct. App. 2004) (emphasis in original). The covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Agosto v. Astor*, 120 Cal.App.4th 596, 607 (Ct. App. 2004). Here, Plaintiffs have not alleged any express terms of the purported oral agreement which Nationstar has breached. For example, while the FAC alleges that Nationstar failed to "timely deny or approve" the loan modification application, the FAC does not identify any express terms setting forth the time limit for Nationstar to deny or approve the application.

Third, the FAC's own allegations prevent a plausible inference that Nationstar breached any agreement to "review" Plaintiffs' loan modification application. The FAC alleges that

---

[4] Nationstar also argues that the alleged oral agreement cannot constitute an enforceable contract under the statute of frauds. Mot. 10–11. Because Plaintiffs have failed to allege the existence of a binding oral agreement, the court need not address whether such a contract would be barred under the statute of frauds.

12

Nationstar *did* review the application and asked Plaintiffs for updated financial information. FAC ¶¶ 20–21, 24, 33. Thus, Plaintiffs fail to allege a breach of any oral agreement.

Accordingly, Plaintiffs have not sufficiently pled a claim for breach of the covenant of good faith and fair dealing. The original complaint's deficiencies have not been cured. In particular, the FAC does not adequately plead the existence of a binding contract, let alone allege any express terms of the contract. Moreover, the FAC's allegations that Nationstar did review Plaintiffs' loan modification application contradict Plaintiffs' assertion that Nationstar breached the purported oral agreement. This deficiency cannot be cured by an amendment. Moreover, Plaintiffs continue to fail to state a claim for breach of the covenant of good faith and fair dealing and they have offered no indication that they can remedy their repeated failure. Accordingly, Nationstar's motion to dismiss the second cause of action is GRANTED without leave to amend.

### iii. Third Cause of Action: Negligence

The third cause of action asserts a common law negligence claim. FAC ¶¶ 86–112. Plaintiffs allege that Nationstar "owed a duty of reasonable care in the handling of Plaintiff[s'] loan modification at issue," "breached that duty by failing to take care and keep control over documents," and "caused extensive delays in the review process." *Id.* ¶ 106. Plaintiffs further allege that Nationstar "had a duty to modify Plaintiff[s'] loan based on [Nationstar's] duty as [a loan] servicer." *Id.* ¶ 108. The elements of a negligence cause of action are (1) legal duty owed to plaintiff; (2) breach; (3) causation; and (4) injury to plaintiff. *Mendoza v. City of Los Angeles*, 66 Cal.App.4th 1333, 1339 (1998).

Nationstar argues that Plaintiffs' negligence claim fails because Nationstar did not owe Plaintiffs a duty of care as their loan servicer. Mot. 14. The Court agrees with Nationstar's argument. In fact, the Court previously ruled that California law does not impose a duty of care to lenders when considering loan modifications. October 16, 2017 Order 8. Plaintiffs have provided no opposition or allege facts that persuades the Court to change its earlier conclusion. Nevertheless, because the California Supreme Court has not addressed the issue of whether lenders owe borrowers a duty of care when considering loan modifications under California law, the Court explains the basis for its conclusion below.

13

In California, "as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Sav. & Loan Assn.*, 231 Cal. App. 3d 1089, 1096 (1991). However, that general rule is not determinative in every case. *Rossetta v. CitiMortgage, Inc.*, 18 Cal. App. 5th 628, 637 (Ct. App. 2017). To determine whether a duty of care exists in a particular case, California courts balance the factors set forth in *Biakanja v. Irving* (1958) 49 Cal. 2d 647 (1958). *Id.* Those factors are: (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm. *Biakanja*, 49 Cal. 2d at 650.

"California courts of appeal have not settled on a uniform application of the *Biakanja* factors in cases that involve a loan modification." *Rosetta*, 18 Cal. App. 5th at 637–38. "Although lenders have no duty to offer or approve a loan modification, courts are divided on the question of whether accepting documents for a loan modification is within the scope of a lender's conventional role as a mere lender of money, or whether, and under what circumstances, it can give rise to a duty of care with respect to the processing of the loan modification application." *Id.* (internal citations omitted). Some courts have followed *Lueras v. BAC Home Loans Servicing, L.P.*, 221 Cal. App. 4th 49, 67 (Ct. App. 2013), and its progeny to decide that under the *Biakanja* factors a loan servicer does not owe a home mortgagee a common law duty of care in the processing of a loan modification application. Other courts have instead followed *Alvarez v. BAC Home Loans Servicing, L.P.*, 228 Cal. App. 4th 941, 944 (Ct. App. 2014), and its progeny in deciding that a common law duty of care in the loan modification process does arise under application of the *Biakanja* factors. California appellate courts and federal district courts within the Ninth Circuit appear to be split relatively evenly on this question. *See Rosetta*, 18 Cal. App. 5th at 638–39 (collecting cases).

To the extent it has addressed the question, the Ninth Circuit has concluded that "application of the *Biakanja* factors does not support imposition of such a duty." *Anderson v.*

14

*Deutsche Bank Nat. Tr. Co. Americas*, 649 F. App'x 550, 552 (9th Cir. 2016) (no duty of care where the borrower's negligence claim is based on allegation of delay in the processing of loan modification application); *see also Badame v. J.P. Morgan Chase Bank, N.A.*, 641 F. App'x 707, 709-10 (9th Cir. 2016) ("Chase did not owe Plaintiffs a duty of care when considering their loan modification application because 'a loan modification is the renegotiation of loan terms, which falls squarely within the scope of a lending institution's conventional role as a lender of money.'") (quoting *Lueras*, 221 Cal. App. 4th at 67); *Deschaine v. IndyMac Mortg. Servs.*, 617 F. App'x 690, 693 (9th Cir. 2015) ("IndyMac owed no duty of care to Deschaine when considering his request for a loan modification, because 'a loan modification is the renegotiation of loan terms, which falls squarely within the scope of a lending institution's conventional role as a lender of money.'") (quoting *Lueras*, 221 Cal. App. 4th at 67).

This Court finds the *Lueras* line of cases to be more persuasive and therefore concludes that, were it to address the issue, the California Supreme Court most likely would find that a mortgage servicer does not owe a borrower a duty of care in processing an application for a residential loan modification. *Strother v. S. Cal. Permanente Med. Grp.*, 79 F.3d 859, 865 (9th Cir. 1996) (holding that in the absence of the state's highest court decision on state law, "a federal court must predict how the highest state court would decide the issue" (citation omitted)). In particular, this Court is not persuaded that the California Supreme Court would find that the foreseeability of harm, closeness of connection, moral blame, or other *Biakanja* factors give rise to a common law duty. "Harm to the borrower as a result of an extended review period, while foreseeable, is neither certain nor primarily attributable to the lender's delay in the processing of the application." *Anderson*, 649 Fed. App'x at 552. Where modification is necessary because the borrower cannot repay the loan, the borrower's harm is not closely connected with the lender's conduct, and the lender is not morally culpable. *See id.* The Court therefore concludes that the California Supreme Court would find cases involving applications for residential loan modification to fall within the general rule that financial institutions do not owe borrowers a common law duty of care.

Accordingly, Nationstar's motion to dismiss the third cause of action is GRANTED

15

without leave to amend.

## IV. ORDER

For the foregoing reasons, Nationstar's motion to dismiss the first amended complaint is GRANTED without leave to amend. Although the Court recognizes that leave to amend should be freely granted, the Court is not required to grant leave to amend if the Court determines that permitting an amendment would be an exercise in futility. *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile."). Despite the Court's guidance in the October 16, 2017 Order, Plaintiffs have not cured the deficiencies in their claims. Moreover, Plaintiffs have failed to provide any indication that leave to amend would not be futile. Accordingly, Plaintiffs' first amended complaint is DISMISSED without leave to amend. The Clerk of Court shall close the case.

**IT IS SO ORDERED.**

Dated: April 24, 2018

_____
BETH LABSON FREEMAN
United States District Judge